JASON S. NUNNERMACKER, ESQ. 2849
ARTURI, D'ARGENIO, GUAGLARDI & MELITI, LLP
MACK CENTER I
365 W. PASSAIC STREET, Suite 130
ROCHELLE PARK, NJ 07662
201-947-4100
Attorneys for Arturi, D'Argenio, Guaglardi & Meliti, LLP and
Conrad Roncati

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | **Case No.: 10-6319** |
| LEIGH RZASA-ORMES, : | |
| : | |
| Plaintiff, : | **On Appeal From The** |
| : | **Bankruptcy's Court** |
| v. : | **October 26, 2010, Order** |
| : | **Of Summary Judgment** |
| CONRAD RONCATI and ARTURI, : | |
| D'ARGENIO, GUAGLARDI & MELITI, LLP,: | **CIVIL ACTION** |
| : | |
| Defendants. : | |
| _____ | |

_____

**DEFENDANTS ARTURI, D'ARGENIO, GUAGLARDI & MELITI, LLP AND DR.
CONRAD RONCATI'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPEAL OF
THE UNITED STATES BANKRUPTCY'S COURT OCTOBER 26, 2010, ORDER OF
SUMMARY JUDGMENT**
_____


On the brief: Jason S. Nunnermacker, Esq.

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES..................................................................3

STATEMENT OF FACTS....................................................................5

LEGAL ARGUMENT........................................................................13

     I.    SUMMARY JUDGMENT WAS NOT APPROPRIATE AS THERE
           REMAINED A GENUINE DISPUTE OF MATERIAL FACTS
           WHICH REQUIRED A TRIAL ON THE MERITS AND
           THEREFORE THE BANKRUPTCY'S COURT'S OCTOBER 25,
           2010 ER WAS ERROR..........................................................13

     A.   THERE WAS A MATERIAL DISPUTE AS TO WHETHER THE
          CHEVROLET OF UPPER SADDLE RIVER PAYMENTS WERE
          PROPERTY OF PLAINTIFF'S ESTATE...............................14

     B.   ADGM AND RONCATI WERE ENTITLED TO DISCOVERY AS TO
          THE RELATIONSHIP AMONGST PLAINTIFF, CHEVROLET OF
          UPPER SADDLE RIVER AND RAMSEY CHEVROLET-GEO, INC.......18

     C.   THE CONSENT ORDER IS A LIEN AGAINST THE RAG
          REALTY PAYMENTS THAT WAS PROPERLY PERFECTED BEFORE
          THE COMMENCEMENT OF THE PLAINTIFF'S BANRKUPTCY CASE......20

     D.   EQUITY AND FAIRNESS DEMAND THAT ADGM AND RONCATI
          RETAIN ALL PAYMENTS RECEIVED PRIOR TO THE FILING
          OF PLAINTIFF'S BANKRUPTCY PETITION...........................25

CONCLUSION............................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                              **Page No.**

Bailey v. Nelson,
17 B.R. 50 (Bankr. W.D. Ark. 1981)........................................24,25

Begier v. IRS, 496 US 53 (1990)..............................................16

Bonded Fin. Serv., Inc. v. Eur. Am. Bank,
838 F. 2d 890 (7th Cir. 1988)................................................16

Chemetron Corp. v. Jones,
72 F. 3d 341 (3d Cir. 1995)..................................................13

Donaldson v. Bernstein,
104 F. 3d 547 (3d. Cir. 1997)................................................13

Edmondson v. Aladdin Synergetics, Inc.,
43 B.R. 277 (Bankr. M.D. Tenn. 1984).........................................15

Ellenberg v. First National Bank,
15 B.R. 850 (Bankr. N.D. GA,1981)........................................16,17,18

Hayes Lemmerz International, Inc. v.
Hyundai Motor Company, 329 B.R. 136 (D. Del. 2005)...........................16

In re Ameriserv Food Distribution, Inc. v.
Tramsed Foods, Inc., 315 B.R. 24 (Bankr. Del. 2004)..........................15

In re Blease, 605 F. 2d 907 (3d. Cir. 1979)..................................21

In re Cellnet Data Systems, Inc.
327 F. 3d 242 (3d Cir. 2003).................................................13

In re Evcco Corp. v. Ace Trucking Co.,
828 F. 2d 188 (3d Cir. 1987).................................................22

In re Italiano, 66 B.R. 468 (Bankr. D.N.J. 1986).............................21

In re Parcel Consultants, Inc. v. Guardian Insurance,
287 B.R. 41 (Bankr., D.N.J. 2002)............................................16

In re Ramco American International, Inc.
754 F. 2d 130 (3d Cir. 1985).................................................21

<u>Katz v. First National Bank of Glen Head</u>,
568 <u>F. 2d</u> 964 (2d. Cir. 1977)........................................................24

<u>Knauss v. Dwek</u>,
289 <u>F. Supp. 2d</u> 546 (D.N.J. 2003)..................................................14

<u>Lease-a-Fleet, Inc. v. Wolk</u>,
151 <u>B.R.</u> 341 (Bankr. E.D. Pa 1993)................................................15

<u>Pacitti v. Macy's</u>,
193 <u>F. 3d</u> 766 (3D. Cir. 1999)......................................................14

<u>United States v. United States Gypsum Co.</u>
333 <u>U.S.</u> 364 (1948)................................................................13

## **Statutes**

11 <u>USC</u> 101..........................................................................15
11 <u>USC</u> 547.......................................................................14,15
<u>N.J.S.A</u> 17:10......................................................................21
<u>N.J.S.A.</u> 2A:17-1................................................................22,23
<u>N.J.S.A</u> 2A:17-50..................................................................22
<u>N.J.S.A</u> 2A:17-63..................................................................22

## **Rules**

Federal Bankruptcy Rule 7056.....................................................13,14
Federal Bankruptcy Rule 8013........................................................13
Federal Rules of Civ. Procedure 56..................................................19
New Jersey Court Rule 2:2-3.........................................................22
New Jersey Court Rule 4:42-1........................................................22
New Jersey Court Rule 4:59-1........................................................21

## STATEMENT OF FACTS

This matter began when Plaintiff Leigh Rzasa-Ormes
("Plaintiff") and her former business partner, Raymond Van Duren
("Van Duren") became embroiled in their own business dispute in
1998.  Plaintiff and Van Duren were partners in twelve
automobile dealerships and related real estate holdings,
operating under the trade name "Ramsey Auto Group" ("RAG").
On April 11, 2000, Plaintiff and Van Duren entered into a
written Binding Arbitration Agreement to resolve the business
dispute, designating Roncati as arbitrator.  Certification of
Jason S. Nunnermacker, Esq. in Opposition to Plaintiff's Motion
for Summary Judgment ("JSN Cert.") <u>Exhibit</u> A[1]. Roncati is in his
mid 70's, a retiree and was the former Bergen County Superior
Court Administrator.

The Arbitration had two separate phases that initially
addressed the parties' interests in the dealerships ("First
Phase") and then the parties' interest in various real estate
holdings ("Second Phase").  Van Duren and Plaintiff each agreed
to pay one-half of Roncati's fees to serve as arbitrator on an
hourly basis and further agreed to pay equally for all expenses
and professional fees incurred by Roncati relating to the
arbitration.

After conducting several hearings, during the First Phase,

---

[1] The undersigned's Certification is entered as Number 29 on the United States
Bankruptcy Docket.  For the convenience of the Court, a copy of this
Certification is being forwarded to the Court via overnight mail.

Roncati issued a partial arbitration award dated March 19, 2001 ("March 2001 Award").  Plaintiff believed Roncati's March 2001 Award was unfavorable on the basis that it did not adequately compensate her interests in the dealerships.  In an attempt to compel Roncati's recusal from the Second Phase, and as a mere litigation tactic, Plaintiff filed a frivolous lawsuit against Roncati claiming Roncati was biased and acted partially during the Arbitration.

The Chancery Division of the Bergen County Superior Court dismissed Plaintiff's lawsuit, *sua sponte*, determining that it had no basis in law or fact.  The Chancery Court directed that any further action to vacate the award should await the completion of the entire arbitration, as the Court perceived the Plaintiff's action against Roncati to be no more than a litigation ploy.

The Arbitration then continued into the Second Phase, with Roncati as arbitrator.  He conducted hearings for another three years and issued a February 4, 2005, award ("February 2005 Award"), which amongst other provisions, directed Plaintiff and Van Duren to each pay one half of his fee as arbitrator and one-half of all attorney's fees he incurred to ADGM.  JSN Cert. Exhibit B[2].

The Chancery Division confirmed the February 2005 Award. Thereafter, Plaintiff appealed the confirmation of the February 2005 Award to the Appellate Division and the Supreme Court

---

[2] The February 2005 Award was an interim award which was made final by a Final Arbitration Award issued by Roncati in June 2005.

arguing that Roncati was biased and incompetent to serve as arbitrator.  Both the Appellate Division and the Supreme Court rejected Plaintiff's arguments and confirmed the February 2005 Award.

### Post-Arbitration Litigation

After the issuance of the February 2005 Award, and in spite of the Chancery Division's prior rejection of Plaintiff's bias claims against Roncati and admonitions against frivolous pleadings, and while her appeals were still pending, Plaintiff again filed suit against Roncati alleging bias and other inappropriate conduct during the Arbitration.  In response, Roncati filed a counterclaim demanding that Plaintiff pay one-half of his Arbitration fees and his counsel fees incurred during the Arbitration, and asserting that Plaintiff's litigation was frivolous.

In July 2008, the Law Division of the Bergen County Superior Court dismissed Plaintiff's lawsuit against Roncati with prejudice on the basis that the prior Chancery Court decision was *res judicata*, as by this time, the Appellate Division and Supreme Court found no wrongdoing by Roncati.

Roncati's claims for Arbitration fees and counsel fees then proceeded to trial.

At that time the Honorable Rachelle Harz, J.S.C. found as a matter of law that Plaintiff is liable for one-half of Roncati's Arbitration fees and one-half of the attorney's fees he incurred.

Accordingly, on February 13, 2009 Judge Harz entered final

judgment against Plaintiff and in favor of Roncati and ADGM, in the amount of $201,791.93 ("Final Judgment"). JSN Cert. <u>Exhibit</u> C.

The Final Judgment was docketed with the Superior Court on February 19, 2009 as a lien against the Plaintiff's real property.

### Enforcement of Final Judgment against Plaintiff

After the Final Judgment was entered, ADGM received a payment of $32,015.63 from a third-party entity entitled Chevrolet of Upper Saddle River ("C.U.S.R") in relation to its collection efforts to enforce the Final Judgment. Certification of Ilissa Churgin Hook, <u>Exhibit</u> C[3]. Notably, C.U.S.R is not an entity in bankruptcy, nor is it listed on Rzasa-Ormes' bankruptcy petition as an asset of her estate.

As ADGM and Roncati were undertaking collection efforts, it determined that Plaintiff received approximately $15,000.00 per month in commercial rental income from her fifty percent membership interest in Rag Realty, LLC ("Rag Realty"), a holding company for multiple commercial real property in Northern Bergen County, New Jersey. At the request of ADGM, a writ of execution was issued by the Superior Court on March 3, 2009. JSN Cert. <u>Exhibit</u> D. On March 4, 2009, ADGM prepared to forward the writ

---

[3]Ms. Hook's Certification is entered as Number 22 on the United States Bankruptcy Docket. For the convenience of the Court, a copy of this Certification is being forwarded to the Court via overnight mail.

of execution to the Bergen County Sheriff with instructions to levy the Rag Realty payments to Plaintiff, as well as other potential assets of the Plaintiff.  However, before the writ was delivered to the Sheriff, the Plaintiff contacted ADGM and advised that, to deter further collections efforts, she would consent to Roncati's and ADGM's collecting the Rag Realty payment each month until the Final Judgment was satisfied. Therefore, in lieu of formal execution by ADGM and Roncati, Plaintiff consented to a garnishment of her approximate $15,000.00 rental income.

In reliance upon Plaintiff's offer, ADGM prepared a consent order pursuant to R. 4:59-1 and withheld service of the writ to the Sheriff and refrained from further collection procedures.  However, Plaintiff, once again exhibiting bad faith, delayed executing the consent order.  Consequently, ADGM again prepared to send the writ to the Sheriff and to submit an Order to Show Cause for restraint and turnover of the Rag Realty payments to Plaintiff.

On March 11, 2009 ADGM advised Plaintiff that the show-cause order would be filed the next day.  ADGM also advised that it would seek to hold Plaintiff liable for the attorney's fees incurred for the preparation and filing of the application pursuant to the June 2005 Award.   The next day, March 12, 2009, Plaintiff executed the Consent Order, thus agreeing that ADGM

and Roncati should receive future Rag Realty Payments.  The
Superior Court entered and filed the Consent Order that day.
The Consent Order recited that ADGM and Roncati had the right to
levy upon the Rag Realty payments and that such payments were to
be turned over to ADGM each month, in exchange, ADGM and Roncati
agreed to not pursue any other collection efforts pursuant to
the New Jersey Rules of Court.  JSN Cert. <u>Exhibit</u> E.

     Accordingly, because of the Consent Order there was no need
for ADGM to forward the writ to the sheriff and formally levy
upon the assets of the Plaintiff, which included but were not
limited to, the Rag Realty Payment.  If not for the Consent
Order, the writ would have been forwarded to the Sheriff and the
Rag Realty payment and all other personalty of the Plaintiff
would have been subject to further execution.

     However, despite Plaintiff's previous bad faith that
continued for years in this matter and ADGM's and Roncati's
cooperation and good faith in refraining from executing upon the
Final Judgment any further, it is the C.U.S.R. payment to ADGM
and the Rag Realty payments that Plaintiff now seeks to be
returned under the applicable bankruptcy preference statutes.
However, the C.U.S.R. payments were paid by a third-party
entity, which is not listed as an asset of Plaintiff's on her

bankruptcy petition.   JSN Cert. <u>Exhibit</u> F[4].

Consequently, as was argued to the trial court and as set forth below, Plaintiff never had possession of such funds and therefore these monies were "never an interest of the debtor in property" pursuant to 11 <u>USC</u> 547(b).

As to the other payments, they were received pursuant to a Consent Order, which Plaintiff only executed to avoid ADGM's collection levy, while Plaintiff was represented by competent counsel.  The Consent Order was entered for Plaintiff's own benefit, as a gesture of good faith by Roncati and ADGM as she indicated that she wanted time to satisfy the Final Judgment. Notably, the Final Judgment was entered and docketed outside the 90 day preference period.

This Court should be aware that for nearly a decade, Plaintiff, motivated solely by animosity and bitterness, sought revenge against Roncati because he made decisions in the Arbitration that Plaintiff believes were inaccurate and unfair. Her tactics tormented a former Superior Court trial administrator who was in his early and mid 70s simply because he performed his duties as Arbitrator, duties in which Plaintiff consented to him performing.  Ten years after the start of the Arbitration and as a direct result of her constant litigation tactics and unfounded claims, the Final Judgment and the Consent

---

[4] Attached as <u>Exhibit</u> F to the JSN Cert. is Schedule B of Plaintiff's Bankruptcy Petition.

Order were entered.

To force the return of the money ADGM and Dr. Roncati received without at least a trial on the merits of Plaintiff's claims, it would only reward Plaintiff's frivolous and spiteful litigation tactics in the New Jersey Superior Court.

Consequently, ADGM and Dr. Roncati respectfully request that the Court remand this matter to the Bankruptcy trial court so that a full hearing could be held.

**LEGAL ARGUMENT**

I.   **SUMMARY JUDGMENT WAS NOT APPROPRIATE AS THERE REMAINED A GENUINE DISPUTE OF MATERIAL FACTS WHICH REQUIRED A TRIAL ON THE MERITS AND THEREFORE THE BANKRUPTCY'S COURT'S OCTOBER 25, 2010 ORDER WAS ERROR**

Federal Bankruptcy Rule 8013 provides that the New Jersey District Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."   A district court is not to set aside a finding of fact unless "clearly erroneous." Ibid.   A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Cellnet Data Sys., Inc., 327 F.3d 242, 244 (3d Cir. 2003) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395(1948)). A bankruptcy court's conclusions of law are subject to *de novo* or plenary review by the district court.   *See*, Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997).   When a matter presents both a question of law and a question of fact, the relevant standard must be applied to each component of the issue.   *See*, Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir.1995).

As to summary judgment, Federal Rule of Bankruptcy Procedure 7056 provides:

> If the pleadings, depositions, answers to interrogatories, and admissions on file, together with

> the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court's role while considering a summary judgment motion, "is not to weigh evidence, but to determine whether there is a genuine issue for trial." <u>Knauss v. Dwek</u>, 289 <u>F. Supp</u>. 2d 546, 549 (D.N.J 2003).  Of course, this court must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." <u>Pacitti v. Macy's</u>, 193 <u>F. 3d</u> 766, 772 (3rd. Cir. 1999).

For the reasons set forth below, the bankruptcy trial court erred in granting Plaintiff's motion for summary judgment and entering the October 25, 2010.

**A. THERE WAS A MATERIAL DISPUTE AS TO WHETHER THE CHEVROLET OF UPPER SADDLE RIVER PAYMENTS WERE PROPERTY OF PLAINTIFF'S ESTATE**

11 <u>USC</u> 547 (b)states:

> Except as provided in subsection (c) or (i) of this section, the trustee may avoid any transfer of an interest in the Plaintiff in property-
>
> (1)  to or for the benefit of a creditor;
>
> (2)  for or on account of an antecedent debt owed by the Plaintiff before such transfer was made;
>
> (3)   made while the Plaintiff was insolvent;
>
> (4)  made-
>
> (A)  on or within 90 days before the filing of the petition;
>                 …
> (5)  that enables such creditor to receive more than

    such creditor would receive if-

(A)   the case were a case under Chapter 7 of this
     title;

(B)   the transfer had not been made; and

(C)   such creditor received payment of such debt to
     the extent provided by the provisions of this title.

[Emphasis added].

Pursuant to 11 USC 547 (g), the trustee bears the burden of proving the avoidability of a transfer pursuant to section 547 (b) by a preponderance of the evidence.  Lease-a-Fleet, Inc. v. Wolk, 151 B.R. 341, 349 (Bankr. E.D. Pa 1993).

11 USC 101 (54)(D) mandates that "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property or (ii) an interest property" shall be a transfer under the code.  Therefore:

> In order to establish the existence of a preference
> transfer pursuant to 11 USC 547 (b), the trustee must
> establish the threshold element that the property
> transferred belonged to the Plaintiff.
>
> Edmondson v. Aladdin Synergetics, Inc. 43 B.R. 277,
> 278  (Bankr. M.D. Tenn. 1984).

The statute requires "that the property transferred by the Plaintiff be 'an interest of the Plaintiff in property.'" In Re Ameriserv Food Distribution, Inc. v. Tramsed Foods, Inc. 315 B.R. 24, 29 (Bankr. Del. 2004).  "It is well settled that for the avoiding powers to be invoked pursuant to sections 547 and 549, the property transferred must have been property of the

estate." In re Parcel Consultants, Inc. v. Guardian Insurance 401, 287 B.R. 41 (Bankr, D.N.J. 2002). The Supreme Court has held this to mean that the "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Begier v. IRS, 496 US 53, 58 (1990). "The minimum requirement of status as a transferee [to recover payments] is dominion over the money or other asset, the right to put the money to one's own purpose." Parcel Consultants, Inc., at 46. Further, for a Plaintiff to have "dominion" over the property sought to be recovered, she shall be capable of utilizing the property for "whatever purposes he or she wishes, be it to invest in lottery tickets or uranium stocks." Bonded Fin. Serv. Inc. v. Eur. Am. Bank, 838 F. 2d 890, 894 (7th Cir. 1988).

As such, and notably, "the use of another entity's property to pay a creditor of the Plaintiff cannot be a preference." Hayes Lemmerz International, Inc. v. Hyundai Motor Company, 329 B.R. 136, 141 (D. Del. 2005).

Similar to the facts at bar, in Ellenberg v. First National Bank, 15 B.R. 850 (Bankr. N.D. GA, 1981) the Northern District of Georgia addressed whether a payment made by a third-party to a creditor of a Plaintiff within the preference period can be voided by the trustee. There, the Plaintiff's father made an installment loan payment by check to the bank-defendant on

16

behalf of his daughter-Plaintiff, which was payable to the bank.
The partial payment was slightly more than the installment due
as it was the father's intention for the daughter to have the
balance, which equaled approximately $140.00.   The trustee
sought to void the payment by the father as a preference because
the bank required the endorsement of Plaintiff on the check and
therefore, as alleged, it was briefly in Plaintiff's control,
i.e., possession.  Id., p. 851.

Rejecting the trustee's claim, the Court stated:

> A consideration of the totality of the circumstances
> shows clearly that this result cannot be reached when
> viewed in light of the overriding policies and spirit
> of the Bankruptcy Code.  We note that there is no
> reason why a third-party cannot take it upon himself
> to pay the debts of another and therefore help in his
> own way to facilitate the Plaintiffs eventual fresh
> start.

> [Ibid].

The Court further held:

> The check payable to [Defendant] was never meant to be
> paid to Plaintiff, but was intended to directly pay
> her debt.  The estate of the Plaintiff has not been
> diminished, and that is the concern of 547(b).  To
> find a preference on the facts before us would not do
> equity among the parties.

> [Id., p. 852].

Here, as in Ellenberg, a third party, General Motors,
issued two checks payable to another third-party entity,
C.U.S.R.  Certification of Ilissa Hook, Exhibit C.  The checks
were not payable to Plaintiff, or any other entity owned by

Plaintiff seeking bankruptcy protection. The checks were never deposited into Plaintiff's bank accounts. Plaintiff, as the plaintiff in Ellenberg, simply endorsed the checks to ADGM. These checks were never part of the bankruptcy estate, nor were they ever in the Plaintiff's possession. Further, these checks are not even payable to Plaintiff.

Nothing highlights this point better than the fact that C.U.S.R is not listed as an asset on Plaintiff's bankruptcy petition. JSN Cert. Exhibit F. Quite simply, Plaintiff cannot now claim an interest in property, specifically C.U.S.R, when that asset is not listed on her petition.

Therefore, the C.U.S.R payments were never a part of the estate and were never in Plaintiff's position. Consequently, Plaintiff cannot recover such payment and the trial Court erred in granting Plaintiff's motion to recover such payments from Defendants.

### B. ADGM AND RONCATI WERE ENTITLED TO DISCOVERY AS TO THE RELATIONSHIP AMONGST PLAINTIFF, CHEVROLET OF UPPER SADDLE RIVER AND RAMSEY CHEVROLET-GEO, INC.

Federal Rules of Civil Procedure provide:

**When Facts Are Unavailable to the Nonmovant**. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3)  issue any other appropriate order.

[Emphasis added. Fed. R. Civ. P. 56 (d)].

Here, after the Final Judgment was entered, ADGM received a payment of $32,015.63 from C.U.S.R in relation to its collection efforts to enforce the Final Judgment. Certification of Ilissa Churgin Hook, Exhibit C. Notably, and acknowledged by Plaintiff in her reply papers and at oral argument on the motion, C.U.S.R is not an entity in bankruptcy, nor is it listed on Rzasa-Ormes' bankruptcy petition as an asset of her estate.

It was not until Defendants reviewed Plaintiff's reply papers on the morning of October 18, 2010, the day of oral argument for Plaintiff's Motion for summary judgment, that the Defendants learned that Plaintiff alleges C.U.S.R is simply the trade name for Ramsey Chevrolet-Geo, Inc. ("Ramsey Chevrolet"), an entity listed on Plaintiff's petition.  Reply Certification of Leigh Rzasa-Ormes, ¶3[5].  Therefore, Plaintiff argued in her reply papers and during oral argument that as C.U.S.R. and Ramsey Chevrolet are the same entity, the payments from General Motors were part of the Plaintiff's estate and subject to recovery as a preference transfer.

Clearly, the Defendants would have no knowledge that Plaintiff intended to posit that C.U.S.R and Ramsey Chevrolet

---

[5] Plaintiff's Reply Certification is entered as number 30 on the United States Bankruptcy Court's Docket.  A copy of same is being forwarded to the Court via overnight mail.

were the same entity as Plaintiff did not identify such relationship, either in her petition or in her discovery responses.  It is simply inequitable and prejudicial to the Defendants to learn at the literal 11th hour that Plaintiff claims that C.U.S.R. and Ramsey Chevrolet are the same entity and that such payments from General Motors were therefore part of her estate.

In the very least, Defendants should have been allowed to engage in discovery as to this issue and learn the true relationship of these entities before judgment was entered by the trial court.

Consequently, the trial court's refusal to allow such discovery and its judgment compelling Defendants to return the $32, 015.63 was in error. Therefore, this Court must remand this matter to the trial court for further proceedings.

### C. THE CONSENT ORDER IS A LIEN AGAINST THE RAG REALTY PAYMENTS THAT WAS PROPERLY PERFECTED BEFORE THE COMMENCEMENT OF THE PLAINTIFF'S BANRKUPTCY CASE

The Final Judgment against the Plaintiff in the amount of $201,791.93 was entered in favor of ADGM and Roncati on February 13, 2009, and docketed with the Clerk of the Superior Court on February 19, 2009.  Both dates are beyond the 90 day preference period.  The Final Judgment was not appealed within the time provided by the New Jersey Rules of Court.  The Plaintiff does

not contend that the Final Judgment should be avoided, nor that there was any irregularity in its enforcement.

Ordinarily, under New Jersey law, a lien against personal property in favor of a judgment creditor is created by a levy, which relates back to the date a writ of execution is delivered to the sheriff.  N.J.S.A. 17-10; In re Ramco American International, Inc., 754 F. 2d 130, 132 (3d Cir. 1985).  A judgment creditor who levies prior to the filing of a judgment debtor's bankruptcy petition has perfected its lien against the hypothetical lien of the trustee of the bankruptcy estate.  In re Blease, 605 F. 2d 907 (3d Cir. 1979); In re Italiano, 66 B.R. 468, 478 (Bankr. D.N.J. 1986).

New Jersey procedure does not limit enforcement of a judge to issuance of a writ of execution:

> Execution (a) In General.  Process to enforce a
> judgment or order for the payment of money and process
> to collect costs allowed by a judgment or order, shal
> be a writ of execution, *except if the court otherwise
> orders* . . . .

> [R. 4:59-1 (emphasis added)].

In addition, New Jersey practice provides for the issuance of court orders to enforce judgments against income or profits of a judgment plaintiff:

> When a judgment has been recovered in the Superior
> Court, and where any wages, debts, earnings, salary,
> income from trust funds or profits are due and owing
> to the judgment Plaintiff, or thereafter become due
> and owing to him, to the amount of $48.00 or more a

week, the judgment creditor may, on notice to the
Plaintiff, apply to the court in which the judgment
was recovered, or to the court having jurisdiction
over same, and upon satisfactory proofs, by affidavit
or otherwise, <u>the court shall grant an order</u> directing
that execution issue against the  wages, debts,
earnings, salary, income from trust funds or profits
of the judgment Plaintiff.

[<u>N.J.S.A.</u> 2A:17-50 (emphasis added)].

Further, a court order is the means by which execution of a
debt due or accruing to the judgment Plaintiff is turned over
from the third party garnishee for the benefit of the judgment
creditor.  <u>N.J.S.A.</u> 2A:17-63.

New Jersey practice provides broad authority for the entry
of consent judgments and orders.  <u>R.</u> 4:42-1(d).  A judgment or
order entered with the consent of the parties is ordinarily not
appealable for the purpose of challenging its substantive
provisions.  Pressler, <u>Current N.J. Court Rules,</u> Comment Rule
2:2-3[2.2.3] (Gann).

When bankruptcy courts assess the creation of property
rights during the collection of judgments, it is "well settled
that a party may waive statutory provisions (as well as other
rights) intended for that party's benefit and not affecting the
public interest."  <u>In re Evcco Leasing Corp. v. Ace Trucking
Co.</u>, 828 <u>F.2d</u> 188, 193 (3d Cir. 1987).  In <u>Evvco Leasing</u>, the
judgment creditor executed against realty prior to personalty in
violation of <u>N.J.S.A.</u> 2A:17-1.  However, it did so based on the

plaintiff's representation that it had no personal assets.  <u>Id.</u> at 190.  The Third Circuit held that plaintiff's representations constituted a waiver of its rights under <u>N.J.S.A.</u> 2A:17-1, and therefore upheld the creditor's lien.

> A waiver need not be asserted directly or expressly.  It is well settled that waiver may be established by conduct inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right....  New Jersey Courts have held that a waiver occurs when a party dispenses with the performance of something which he or she has a right to exact, or does or forbears to do something inconsistently with the right or the intention to rely on it.... [Plaintiff]'s conduct amounted to a waiver as a matter of law.

> [<u>Id.</u> at 195.]

Here, by entering into the Consent Order, the Plaintiff waived any right she may have had to enforcement of a lien through the delivery of a writ of execution to the sheriff and a subsequent levy.  The Consent Order provides that "Roncati and [ADGM] are judgment creditors of Leigh Rzasa-Ormes and are entitled to levy upon the net monthly income paid to Leigh Rzasa-Ormes from her ownership interest in the RAG Properties".  The Consent Order decreed that "Joshua Krantz of National Property Associates [address] is hereby directed to pay Leigh Rzasa-Ormes' share of all the net monthly rental proceeds arising from the RAG Properties directly to the law firm of [ADGM] as and when due and payable to Rzasa-Ormes".  The Consent

Order was received by Krantz and honored by him through the payment of three monthly installments to ADGM.

Thus, the Consent Order is the equivalent of a writ of execution, levied against a garnishee, as to which a turnover has been entered in order to satisfy a judgment which was entered outside the 90 day period.  The Consent Order served as a lien against the RAG Realty payments that had been properly perfected against the bankruptcy estate and should be honored by the Bankruptcy Court as to the payments already made thereto.

As such, the trial court erred in granting Plaintiff's motion and this matter should be remanded to the trial court for further hearing.

### D. EQUITY AND FAIRNESS DEMAND THAT ADGM AND RONCATI RETAIN ALL PAYMENTS RECEIVED PRIOR TO THE FILING OF PLAINTIFF'S BANKRUPTCY PETITION

The Second Circuit has held that when considering whether a transfer is preference pursuant to Section 547, the trial court shall "look…through form to substance, (and) treat the transaction according to its real nature." Katz v. First National Bank of Glen Head, 568 F. 2d 964, 970 (2d. Cir. 1977).

In Bailey v. Nelson, 17 B.R. 50 (Bankr. W.D. Ark. 1981), the Court addressed whether a payment simply endorsed over by the plaintiff-debtor to the defendant-creditor in partial satisfaction of a material's man lien was a preference payment to be voided.  Id. at 51.  There, the plaintiff was a plumber

sub-contractor that purchased material from the defendant in the amount of $9,445.14.  The plaintiff advised defendant that it could no longer afford making payments on this debt and that it was "taking bankruptcy". Ibid.  However, the plaintiff had one final payment owed to him from the general contractor in the amount of $4,005.84.  The plaintiff and defendant both went to the general contractor and received the check at which time plaintiff promptly endorsed it over to defendant in partial satisfaction of the debt.  Ibid.

The Court held that:

> In substance, the payment was simply a payment on account of the materials which was owed on account of the material-man's lien of the defendant.
> The debtor simply acted as a conduit for the payment, which, under the circumstances detailed above, must be regarded as paid only on account of the lien and or the express purpose of dissolving it.
>
> [Id. at p. 52.]

Moreover, the Court cited equitable principles as well when holding that the payment at issue was not a voidable preference:

> Even if the bankruptcy estate could be said to be entitled to recover the money thus paid, the demands of equity and justice would require that the same money should be regarded as the proceeds of the material against which the defendant's lien was initially asserted and therefore payable to defendant from the estate in satisfaction of the lien.
>
> [Emphasis added.  Ibid.].

Here, as set forth above, the Final Judgment served as a lien against Plaintiff's property.  The Final Judgment was

entered as the Superior Court recognized the many years of Plaintiff's frivolous and spiteful tactics in bringing suit twice against Roncati.  Plaintiff continued her tactics despite the fact that the Superior Court's Chancery Division and Law Division, both multiple times, the Appellate Division, and even the New Jersey Supreme Court all found that Plaintiff's claims against Roncati were entirely baseless.

Specifically, after conducting several hearings, during the First Phase, Roncati issued a partial arbitration award, the March 2001 Award.  Plaintiff believed Roncati's March 2001 Award was unfavorable on the basis that it did not adequately compensate her interests in the dealerships. In an attempt to compel Roncati's recusal from the Second Phase, and as a mere litigation tactic, Plaintiff filed a frivolous lawsuit against Roncati claiming Roncati was biased and acted partially during the Arbitration.

The Chancery Division of the Bergen County Superior Court, for the first time, dismissed Plaintiff's lawsuit, *sua sponte*, determining that it had no basis in law or fact.  The Chancery Court directed that any further action to vacate the award should await the completion of the entire arbitration, as the Court perceived the Plaintiff's action against Roncati to be no more than a litigation ploy.

The Arbitration then continued into the Second Phase, with Roncati as arbitrator.  He conducted hearings for another three years and issued the February 2005 Award, which amongst other provisions, directed Plaintiff and Van Duren to each pay one half of his fee as arbitrator and one-half of all attorney's fees he incurred to ADGM.  JSN Cert. Exhibit B.   The Chancery Division confirmed the February 2005 Award over Plaintiff's vigorous allegations that Roncati was biased and incompetent to serve as Arbitrator.

        Thereafter, Plaintiff appealed the confirmation of the February 2005 Award to the Appellate Division and the Supreme Court arguing, once again, that Roncati was biased and incompetent to serve as arbitrator.  Both the Appellate Division and the Supreme Court rejected Plaintiff's arguments and confirmed the February 2005 Award. JSN Cert. ¶¶9-12.

    Incredibly, it was not enough for Plaintiff that her claims were deemed unfounded, as after the issuance of the February 2005 Award, and in spite of the Chancery Division's prior rejection of Plaintiff's bias claims against Roncati and admonitions against frivolous pleadings, and while her appeals were still pending, Plaintiff again filed suit against Roncati alleging bias and other inappropriate conduct during the Arbitration.

In response, Roncati was compelled to file a counterclaim demanding that Plaintiff pay one-half of his Arbitration fees and his counsel fees incurred during the Arbitration, and asserting that Plaintiff's litigation was frivolous.  In July 2008, the Law Division of the Bergen County Superior Court dismissed Plaintiff's lawsuit against Roncati with prejudice on the basis that the prior Chancery Court decision was *res judicata*, as by this time, the Appellate Division and Supreme Court found no wrongdoing by Roncati. Roncati's claims for Arbitration fees and counsel fees then proceeded to trial.  At that time the Honorable Rachelle Harz, J.S.C. found as a matter of law that Plaintiff is liable for one-half of Roncati's Arbitration fees and one-half of the attorney's fees he incurred.

Accordingly, on February 13, 2009 Judge Harz entered final judgment against Plaintiff and in favor of Roncati and ADGM, in the amount of $201,791.93.  JSN Cert.  <u>Exhibit</u> C.  The Final Judgment was docketed with the Superior Court on February 19, 2009 as a lien against the Plaintiff's real property. JSN Cert. ¶¶13-19.

As a direct result to Plaintiff frivolous claims against Roncati, a man at the time in his early-mid 70s, was compelled to incur significant attorney's fees, and great emotional stress, to defend against allegations that the Chancery

Division, twice, the Law Division, twice, the Appellate Division and the Supreme Court all found to be completely without merit.

Despite Plaintiff's nearly decade full of bad faith and disregard for New Jersey Courts, ADGM and Roncati extended her courtesy and good faith by agreeing to enter into the Consent Order so that Plaintiff could satisfy the Final Judgment lien over time, rather than levying on her property.  The levying of such property was imminent as a writ had already been issued and was being forwarded to the Sheriff the very next morning, as well as the filing of an Order to Show Cause to garnish the Rag Realty payments to Plaintiff.  Both, Plaintiff and her former counsel are well aware of the immediacy of the levy and garnishment.

Indeed, no good deed goes unpunished, as now Plaintiff incredibly seeks back the payments ADGM and Roncati received. Payments that were agreed to by the parties to help Plaintiff.

Consequently, ADGM and Roncati respectfully submit that the "demands of equity and justice" mandate that this Court find the trial court committed error in granting Plaintiff's motion in its entirety and that this Court remand the matter to allow a trial on the merits.

**CONCLUSION**

As a result of the foregoing, ADGM and Roncati respectfully request that the Court remand this matter in its entirety to the trial court for a trial on the merits.

Respectfully submitted,

/S/ Jason S. Nunnermacker

Jason S. Nunnermacker, Esq.
Attorney for Defendants